**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| MARSHA GAIL BLAIR, | ) | |
|                    Plaintiff, | ) | |
| vs. | ) | 1:04-cv-1875-SEB-VSS |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
|  of the Social Security Administration, | ) | |
| | ) | |
|                    Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Marsha Blair ("Blair") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I.  BACKGROUND**

Blair filed an application for SSI on April 2, 2001. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on December 20, 2002. Blair was present, accompanied by her attorney.  Medical and other records were introduced into evidence, and Blair, her boyfriend, and a vocational expert testified at the hearing. The ALJ issued a decision on January 9, 2002, denying benefits.  On September 17, 2004, the Appeals Council denied Blair's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Blair had not engaged in substantial gainful activity since February 1, 1996; (2) the medical evidence established that Blair had severe degenerative disc disease, carpal tunnel syndrome and left shoulder, arm and hand pain; (3) Blair did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4; (4) Blair's testimony as to the extent of her limitations were not entirely credible; (5) Blair had the residual functional capacity ("RFC") to perform the physical exertion requirements of sedentary work with an opportunity to change positions every one hour; no repetitive gripping with left (non-dominant) hand; no work above shoulder with left arm; no work at unprotected heights, around dangerous moving machinery, open flames, or bodies of water; there were no nonexertional limitations; (6) Blair had no past relevant work; (7) Blair's RFC for the full range of sedentary work was reduced by the above cited limitations; (8) Blair was 40 years old, which is defined as a younger individual, she had a 12th grade education, and she did not have any acquired work skills which were transferable to the skilled or semiskilled work activities of other work; (9) if Blair had the capacity to perform the full range of sedentary work, section 416.969 of Regulations No. 16 and Rule 201. 27, Table No. 1 of Appendix 2, Subpart P, Regulation No. 4 would direct a conclusion that she was not disabled; (10) if the range of sedentary work were significantly compromised, section 201.00(h) of Appendix 2 indicated that a finding of disabled would be appropriate; (11) although Blair's exertional limitations did not allow her to perform the full range of sedentary work, using the above cited-rule as a framework for decision-making, there were a significant number of jobs in the State economy which she could perform, including 4,100 assemblers, 3,100 cashiers, and 3,000 general office clerks. With these findings in hand, and through the application of applicable rules, the ALJ concluded that Blair had not been under a "disability" as defined in the Act at any time through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

Blair's sole argument in this action is that the ALJ should have given controlling weight to the RFC assessment completed on June 13, 2002, by treating physician Dr. Marshall.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v.Apfel,* 227 F.3d 863, 870 (7th Cir.2000) (citing 20 C.F.R. § 404.1527(d)(2)). If an ALJ decides to reject medical evidence offered by a treating physician, he must provide good reasons for his decision. *See Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992) ("The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability.").

In 2002, Dr. Marshall noted that a March 2002 MRI scan showed segmental stenosis at L3-4 and L4-5 with evidence of degenerative disk disease of the lower three lumbar levels. (R. at 101). On April 22, 2002, Dr. Marshall gave Blair an epidural steroid injection at L4-5. (R. at 101-102). Dr. Marshall's follow up treatment note of May 14, 2002, stated that a week after her injection, Blair's pain was "better," and that she "actually has some times when she doesn't have much pain." (R. at 38, 100). Blair reported some intermittent numbness of her left foot and leg. *Id.* Upon examination, she had normal deep tendon reflexes, negative figure-of-four test, a straight leg raising sign was negative, and forward

flexion was possible to 60 degrees with stiffness and pain on hyperextension and posterior rotatory bending in either direction. *Id.* After outlining the options of management, Dr. Marshall and Blair agreed on the continuation of her exercise program and the use of Skelaxin for spasm. *Id.*

On June 13, 2002, Dr. Marshall completed a form which indicated that during an 8 hour day, Blair could lift and carry less than 10 pounds frequently or occasionally, that she could stand and walk (with normal breaks) less than 2 hours, she could sit (with normal breaks) less than 2 hours, she could sit 1 hour before changing position, stand 45 minutes before changing position, would need to be able to shift at will from sitting or standing/walking, could occasionally twist, stoop (bend), or climb stairs, and could never crouch or climb ladders. (R. at 133-35). He opined that Blair's impairments would cause her to be absent from work less than once a month. (R. at 135).

The ALJ acknowledged Dr. Marshall's opinion. The ALJ did not give it great weight because he found that it was "not consistent with his [Dr. Marshall's] own objective finding nor those in the other records." (R. at 19). The ALJ noted that on examination Dr. Marshall found heel, toe and ambulatory gaits normal, normal reflexes, normal muscle strength and pulses, negative straight leg raising and negative figure-of-four test bilaterally, with tenderness in the lumbar area. *Id.* He also noted Dr. Marshall's February 2002 report that except for a positive Tinel's sign at the left wrist and tenderness and some limitation of motion (to 75 degrees) in the lumbar spine, the examination was normal. (R. at 18, 112).

The ALJ's RFC determination is in most respects consistent with the findings of Dr. Marshall. The ALJ found that Blair could perform the lifting and carrying requirements of sedentary work, meaning that Blair could lift no more than 10 pounds. See 20 C.F.R. § 404.1567(a). *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). Dr. Marshall opined that Blair could lift and carry less than 10 pounds. (R. at 133). Consistent with Dr. Marshall's restrictions, the ALJ found that Blair would need to change positions every hour and she had no nonexertional limitations. Dr. Marshall opined that Blair's impairments would affect her ability to reach overhead and push and pull, but that they would not affect her gross manipulation or fine finger manipulation. (R. at 135). More restrictive than Dr. Marshall's opinion, the ALJ determined that Blair could do no repetitive gripping with her left (non-dominant) hand; no work above the shoulder with her left arm; and no work at unprotected heights, around dangerous moving machinery, open flames, or bodies of water.

The ALJ's analysis of Dr. Marshall's report is supported by substantial evidence, and the ALJ's explanation for why he did not give it full credit was reasonable. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

4

In sum, in determining Blair's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Blair's age, education, and work history; (2) Blair's history of diagnoses, treatment, medications, and evaluations; (3) Blair's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Blair, a friend, and a vocational expert. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Blair's impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's determination that Blair was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III.  CONCLUSION

There was no error in the assessment of Blair's application for SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Blair is not entitled to relief in this action.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/06/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana